SERGEI LEMBERG (admitted *Pro Hac Vice*)
LEMBERG & ASSOCIATES L.L.C.
1100 Summer Street, 3rd
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424

LARA R. SHAPIRO (State Bar No. 227194)
4145 Via Marina # 324
Marina del Rey, CA 90292
Telephone:  (310) 577-0870
Facsimile:  (424) 228-5351

*Attorneys for Plaintiff,*
*Catherine Evon*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| Catherine Evon,<br><br>          Plaintiff,<br><br>     vs.<br><br>Law Offices of Sidney Mickell; Sidney Mickell, Esq.; and Does 1-100, inclusive,<br><br>          Defendants. | Case No.:  2:09-cv-00760-JAM-GGH<br><br>**MEMORANDUM IN SUPPORT OF**<br>**MOTION FOR AN AWARD OF**<br>**ATTORNEYS' FEES AND COSTS**<br><br>Date:         October 20, 2010<br>Time:        9:30 a.m.<br>Judge:       Judge John A. Mendez<br>Room:       Courtroom 6, 14th Floor |

Table of Contents

Table of Authorities ................................................................................................................ ii

I.      Introduction ...................................................................................................................... 1

II.     Procedural History ........................................................................................................... 1

        a.      Early History: March 18, 2009 (and prior) – September 1, 2009 ........................... 1

        b.      Disclosure History: July 20, 2009 through April 2, 2010 ..................................... 2

        c.      Dispositive Proceedings: May 5, 2010 – July 6, 2010 .......................................... 6

III.    Plaintiff is Entitled to an Award of Attorney's Fees ......................................................... 7

IV.     Attorney's Fees Calculated According to the Lodestar Formula ...................................... 8

        a.      Counsel's Contemporaneous Billing and Expense Records .................................. 9

        b.      Plaintiff's Counsel's Hourly Rate is Reasonable ................................................. 10

        c.      All Work Submitted is Reasonable ...................................................................... 12

        d.      Downward Adjustments to the Lodestar Based Upon Plaintiff's
                Recovery Should Not Be Made ........................................................................... 14

V.      Work Performed by Attorneys Not Admitted to The California Bar or this District is
        Recoverable ................................................................................................................... 14

VI.     Conclusion ..................................................................................................................... 17

Certificate of Service ............................................................................................................ 18

Table of Authorities

**Cases**

Avila v. Olivera Egg Ranch, LLC, 2010 WL 1404397
(E.D. Cal., April 6, 2010) ................................................................................... 10

Beauford v. E.W.H. Group Inc., 2009 WL 3162249 (E.D. Cal., Sept. 29, 2009) ............................. 10

Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984) .............................. 8

Building Serv. Local 47 v. Raceway, 46 F.3d 1392 (6th Cir. 1995) ................................................. 13

Camacho v. Bridgeport Financial, Inc., 523 F.3d 973 (9th Cir. 2008)....................................... 7, 8, 10

City of Burlington v. Dague, 505 U.S. 557, 112 S. Ct. 2638, 2640,
120 L. Ed. 2d 449 (1992)......................................................................................... 8

City of Riverside v. Rivera, 477 U.S. 561 (1986) ......................................................... 13

Costa v. National Action Financial Services, 2008 WL 1925235
(E.D. Cal., April 30, 2008) .................................................................................. 10

Dang v. Cross, 422 F.3d 800 (9th Cir. 2005) ......................................................... 11, 12

Goray v. Unifund CCR Partnters, 2008 WL 2404551 (D.Hawai'I, June 13, 2008) ......................... 12

Grandisher v. Check Enforcement Unit, 2003 WL 187416 (W.D. Mich. 2003) .............................. 13

Gray v. Florida First Financial Group, Inc., 359 F. Supp. 2d 1316
(M.D. Fla. 2005).................................................................................................... 12

Graziano v. Harrison, 950 F.2d 107 (3d Cir. 1991) ........................................................ 8

Joes v. Payco-General Amn. Credits, 1994 WL 465841 (9th Cir., Aug. 29, 1994)........................... 7

Kerr v. Screen Extras Guild, Inc., 536 F.2d 67 (9th Cir. 1975) ...................................... 8, 9

Lee v. Javitch, Block & Rathbone, LLP, 568 F. Supp. 2d 870
(S.D. Ohio 2008) ............................................................................................. 12, 13

Malone v. Hecker, 2007 WL 4200951 (D. Mass 2007) ................................................. 13

Ne. Women's Ctr. v. McMonagle, 889 F.2d 466 (3d Cir. 1989) ...................................... 13

Noyles v. Kelly Services, Inc., 2008 WL 3154681 (E.D. Cal., Aug. 4, 2008)................................ 10

Oslan v. Law Offices of Mitchell N. Kay, 232 F. Supp. 2d 436 (E.D. Pa. 2002) .............................. 13

Perez v. Perkiss, 742 F. Supp. 883 (D. Del. 1990) ............................................................................. 13

Savage v. NIC, Inc., 2010 WL 2347028 (D. Ariz., June 9, 2010) ...................................................... 12

Schueneman v. 1st Credit of Am., LLC, 2007 WL 1967908
(N.D. Cal., July 6, 2007) ....................................................................................................................... 7

Taylor v. Chaing 2009 WL 453050 (E.D. Cal, Feb. 23, 2009) ......................................................... 10

Winterrowd v. American General Annuity Ins. Co., 556 F.3d 815
(9th Cir.  2009) ....................................................................................................................... 14, 15, 16

## I.   <u>INTRODUCTION</u>

On March 18, 2009, Plaintiff Catherine Evon ("Evon") commenced this Action against the Law Offices of Sidney Mickell ("Mickell Offices") alleging that Mickell Offices conducted a debt collection business in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. (the "FDCPA") and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* ("RFDCPA").  The violations alleged in the Complaint fall within three distinct categories: (i) the particular events which led Evon to consult with counsel and seek redress; (ii) the propriety of the content of Defendants' so-called '1033 letters'; and (iii) Defendants' practice of transmitting the '1033 letters' in care of consumers' employers.

## II.   <u>PROCEDURAL HISTORY</u>

### a.   <u>Early History: March 18, 2009 (and prior) – September 1, 2009</u>

The Plaintiff contacted Lemberg and Associates, LLC, a consumer rights law firm experienced in prosecuting actions under the FDCPA and other Federal and State consumer protection statutes, who agreed to represent the Plaintiff.  The crux of Plaintiff's complaints involved Defendants' transmission of a '1033 letter' in the care of her employer, which was opened and viewed by her superiors, in violation of Plaintiff's specific instruction not to contact her employer or send anything to the employer. [1] With Ms. Evon's consent, Attorney Lara Shapiro, of counsel to Lemberg & Associates, LLC, commenced this action in Ms. Evon's behalf.  Mickell Offices Answered [D 9] on May 26, 2009 and filed an Amended Answer [D 11] on June 3, 2009.  Early discussions aimed at resolving the action proved futile.  Notwithstanding the strict liability nature of the statutes involved, and the particulars of Plaintiff's personal claims, the Defendants

---

[1] Defendants ultimately claimed this instruction was 'misheard.'

would not consider early settlement[2] insisting instead upon seeking vindication by the Court.  Once

it became clear that an early resolution was not likely, Mr. Lemberg sought and obtained *pro hac*

*vice* admission in the Eastern District of California [D 14, 16].

Plaintiff also agreed to seek to represent a putative class of consumers to whom Defendants'

'1033 Letter' was transmitted at their respective places of employment.  Accordingly, on July 15,

2009, Plaintiff moved this Court [D 17] for leave to amend the Complaint by (i) adding Sidney

Mickell, personally, as a defendant and (ii) converting the action to a Class Action.  On August 10,

2009, Defendant filed a "Statement of Non-Opposition" [D18] with respect to Plaintiff's amendment

request.[3]  By Order dated August 31, 2009 and entered September 1, 2009 [D19] this Court granted

Plaintiff's application.

### b.  Disclosure History: July 20, 2009 through April 2, 2010

Plaintiff submits that a substantial proportion of the time spent in this litigation involved

compelling Defendants to produce documents, many (if not most) of which should have been – and

frequently are – disclosed as Initial Disclosures.  Ultimately, after five months of efforts, Magistrate

Hollows compelled Defendants to produce all documents requested by Plaintiff (except one

request).

Defendants' failure to serve a Rule 68 Offer of Judgment until virtually the eve of trial

compelled Plaintiff's counsel to prosecute the case with utmost professional vigor.

From the outset, these proceedings were punctuated by Defendants' failure to satisfy basic

disclosure obligations.  Defendants' recalcitrance began with their original attorneys, Mark E. Ellis

---

[2] In fact, the Defendants declined to avail themselves of the strategic use of a Rule 68 offer of judgment.  Since class allegations had not yet been in added, could have obviated the need for any further litigation beyond this point.

[3] Defendants thereby passed on their final pre-class action opportunity to offer judgment under FRCP Rule 68.

of Ellis, LaVoie, Poirier, Steinheimer & McGee, LLP and was perpetuated by John N. Dahlberg of Dillingham & Murphy LLP, who was substituted as defense counsel as of November 2, 2009[4] [D 23].

Communications with Mr. Ellis concerning the deficiency of Defendants' Initial Disclosures began in July 2009.  Plaintiff served a First Set of Interrogatories and a First Request for Documents on August 27, 2009.  After several extensions of time were granted, the Ellis firm served deficient responses and largely baseless objections. Mr. Ellis and several of his associates ignored Plaintiff's attempt to "meet and confer" with respect to discovery, necessitating Plaintiff's motion to compel, filed on October 29, 2009 [D 21].

Immediately following the substitution of Mr. Dahlberg's firm, Mr. Lemberg attempted to amicably pursue resolution to the ongoing disclosure disputes.  Quite unexpectedly, Mr. Dahlberg's method of starting the "meet and confer process" involved service of a 3-page letter on November 10, 2009, via process server, by which Mr. Dahlberg professed to "meet and confer concerning" the taking of Plaintiff's deposition. That letter also threatened Mr. Lemberg with an "immediate *ex parte* application for an order compelling plaintiff to appear" for deposition by the arbitrarily and unilaterally established December 4 deposition deadline[5], and demanding a "written response by noon tomorrow, Wednesday November 11, 2009."  Notably, no 'meet and confer' was necessary with respect to Plaintiff's deposition; the parties disputed only its time in relation to other litigation events in the case.

On November 12, 2009, defense counsel did provide a template for a proposed consent confidentiality order. While that remained under review, Messrs. Lemberg and Dahlberg finally

---

[4] The substitution was apparently motivated or hastened by Plaintiff's application for an Order compelling compliance with discovery demands, filed October 29, 2009.
[5] The Joint Status Report [D 12] initially established December 29, 2009 as the date by which depositions were to be noticed.

"met and conferred" for nearly 1 ½ hours on November 16, 2009.  In preparation for the conference, Mr. Lemberg conducted substantial research so that he could provide legal authority for each and every discovery request made.

On Wednesday, November 25, 2009[6], the language of the Stipulated Protective Order was finally agreed upon. Immediately following that agreement, at 6:27 EST on the eve of Thanksgiving, Mr. Dahlberg transmitted a 12-page, self-serving letter which he characterized as his "good faith effort to meet and confer" with regard to the outstanding dispute concerning responses Plaintiff's discovery demands.

Plaintiff's Motion to Compel [D 21] was scheduled to be heard on December 10, 2009. On November 30, 2009, over the objection of Plaintiff's counsel, Defendants' counsel initiated a telephone conference with the Court for the purpose of seeking an adjournment of the hearing date for the Motion to Compel on the basis that the counsel was in the process of reviewing documents from the client. Based on that representation Magistrate Judge Hollows Ordered the following:

> by 12/04/09, counsel for plaintiff shall inform counsel for dfs which discovery requests are being withdrawn; dfts shall provide complete responses, including production of documents for inspection, to plf's discovery requests by 12/17/09; the hearing on the [21] Motion to Compel is CONTINUED to 01/14/10 at 10:00 AM in Courtroom 24 (GGH) before Magistrate Judge Gregory G. Hollows if necessary; a joint statement shall be filed by 01/07/10 if necessary. (Benson, A.) [Dk. 29]

On December 4, 2009, confirmation concerning the narrowing of discovery demands was transmitted.  In addition, Plaintiff's deposition was taken on December 14, 2009.  Then, on Thursday, December 17, 2009, at 11:41 p.m. EST, the defendants electronically served their supplemental responses to plaintiffs' demands, the sufficiency of which became the subject of Plaintiff's motion to compel and the parties' Joint Report.   At the heart of the remaining dispute

---

[6] The day before Thanksgiving.

was Defendants' wholesale redaction of key documentary discovery such as the Defendants'

training/operating manual, which has served as predicate for their defense of *bona fide* error.

The first business day following counsel's actual receipt of the supplemental discovery was

Monday, December 21, 2009.  That day, having given Plaintiff barely sufficient time to review the

December 17, 2009 transmission, defense counsel demanded that plaintiff "inform us in writing by

Monday, December 28, the remaining interrogatories and document requests you are looking to

compel and why you feel Defendants' supplemental responses thereto are deficient." Although

counsel stated that they "would like to discuss these issues with you via telephone conference from

December 28 to December 31" they made no attempt to do so. Instead, Mr. Dahlberg and his

associates continued to engage Mr. Lemberg in unnecessary e-correspondence, including

interjection of supposed issues regarding plaintiff's failure to produce documents notwithstanding

the fact that no discovery demands, other than the deposition notice, had been served.

Following the conference ultimately held with Magistrate Judge Hollow on January 28,

2010, the Defendants were ordered [D 41] to comply with nearly all of the disputed demands.

Regarding Defendants' redactions, the Magistrate Judge opined [D41, p. 4, n.1]:

> Redaction is, after all, an alteration of potential evidence. The Federal Rules
> sanction only very limited unilateral redaction, see Fed. R. Civ. P. 5.2. Outside
> of these limited circumstances, a party should not take it upon him, her or itself
> to decide unilaterally what context is necessary for the non-redacted part
> disclosed, and what might be useless to the case. It should not come as a shock to
> those involved in litigation, that parties may see the outcome differently.
> Moreover, protective orders are available to shield irrelevant, but important-to-
> keep confidential information, and unless the protective order permits partial
> production, a document should be produced in its entirety. On the other hand,
> where a specific document is very large, and separated by clearly marked
> designations, or separate volumes, each section/volume becomes, more or less, a
> document in itself. However, generally worded sections of the large document
> may apply to specific sections whose potential relevance is unquestioned. Thus,
> unless a particular section unmistakably has no relevance *whatsoever* to the
> allegations in a complaint or denials/defenses in an answer, it should be
> produced along with the other relevant sections. And a word of warning to those

who redact even under this standard – if you make unwarranted redactions, a court may well award sanctions for non-disclosure of requested evidence up to and including default/dismissal based on a seeming bad faith hiding of information.

Plaintiff immediately noticed the depositions of the Defendants.  The examinations were initially scheduled for March 15 and 16, 2010 but were postponed to April 1 and 2, 2010 in order to accommodate the Deponents' schedules.  In the meantime, Defendants sought to depose members of Plaintiff's family.  The issue was critical since Daniel Evon, plaintiff's husband, suffers from a debilitating mental illness.  It was also clear that the only issues raised by the Complaint to which these deponents could meaningfully testify concerned phone calls to the Plaintiff at her home – issues which were claimed only in the context of Count VIII for violations of the RFDCPA.  In all other respects, the RFDCPA claims were duplicative of the FDCPA claims.  Accordingly, and since the putative class would not be prejudiced thereby, Plaintiff withdrew Count VIII of the Complaint.  Plaintiff also withdrew her claims set forth in Count VII of the Complaint (which did not relate to the putative class) and her personal prayer for recovery of "actual damages." The rights of putative class members to later interpose actual damages claims were preserved.

### c.  Dispositive Proceedings: May 5, 2010 – July 6, 2010

On May 5, 2010, the Parties cross-moved for summary judgment.  Defendants sought summary dismissal of Plaintiff's remaining Counts I through VI, in their entirety [D 49-51].  Plaintiff sought partial judgment [D-52-54][7] on liability only, with respect to Counts I, II, IV and V of the Complaint.  Following oral argument, the Court declined to grant summary judgment to Plaintiff but

---

[7] Plaintiff also moved for class certification which motion the Court denied [D-47; D-79].  Without conceding lack of entitlement, Plaintiff voluntarily declines to seek recovery herein with respect to any fees or costs related to the motion for class certification.  All time entries related to the certification motion have been eliminated from the time records submitted in support of this motion.  Plaintiff reserves the right to revisit the issue should the pending appeal prove successful.

granted the Defendants' motion only to the extent of dismissing Counts II and IV of the Complaint. Accordingly, Counts I, III, V and VI were to be tried, albeit as to the Plaintiff, individually, on August 30, 2010.

Thereafter, Defendants submitted for approval by counsel a proposed order regarding the disposition of the Summary Judgment motions. The proposed Order was not acceptable and the parties were instructed to submit counter-proposals. The Proposed Order prepared by Plaintiff's Counsel was ultimately signed by the Court. On June 30, 2010, Defense counsel served a Fed. R. Civ. P. Rule 68 Offer of Judgment which Plaintiff accepted on July 6, 2010. Plaintiff's decision was aimed at avoiding the time and expense of trial while awaiting determination of Plaintiff's appeal as it concerned the putative class. On July 15, 2010, this Court entered Judgment in favor of the Plaintiff in accordance with the terms of the Rule 68 Offer of Judgment [D-85].

Under the terms of the Offer and pursuant to 15 U.S.C. § 1692k (a) (3), Plaintiff now moves for her reasonable attorneys fees and costs incurred in prosecuting this action.

III.    **Plaintiff is Entitled to an Award of Attorney's Fees**

Plaintiff prevailed in holding the Defendants responsible for their violations of the FDCPA and is the "prevailing party" for the purposes of assessment of attorneys fees under 15 U.S.C. 1692k(a)(3). *See* Joes v. Payco-General Amn. Credits, 1994 WL 465841, *2 (9th Cir., Aug. 29, 1994) (plaintiff was the prevailing party upon acceptance of offer of judgment and entry of judgment in its favor); Schueneman v. 1st Credit of Am., LLC, 2007 WL 1967908 (N.D. Cal., July 6, 2007). Such an award was agreed to by Defendants and is mandated by Congress and applicable Ninth Circuit precedent. It is not subject to dispute that, under 15 U.S.C. § 1692k(a)(3), an award of attorneys fees to the "prevailing party," subject to "reasonableness," is required. As the Ninth Circuit Court of Appeals stated in Camacho v. Bridgeport Financial, Inc., 523 F.3d 973 (9th

Cir. 2008), in order "to encourage private enforcement" of certain consumer protection laws, "Congress has legislated that in certain cases prevailing parties may recover their attorneys' fees from the opposing side." Camacho, 523 F.3d at 978 (citing Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003). The FDCPA is such a statute, and it therefore provides "that any debt collector who fails to comply with its provisions is liable 'in the case of any successful action . . . [for] the costs of the action, together with a reasonable attorney's fee as determined by the court.'" Camacho, 523 F.3d at 978 (quoting 15 U.S.C. §1692k (a)(3)).

The award of attorney's fees to successful litigants under the FDCPA plays a critical role in making consumer rights actions viable. By definition, these cases are brought by individual consumers who are usually unable to fund federal litigation. Unscrupulous debt collectors would have little to fear from the FDCPA if consumers were forced to pay attorney's fees or retainers to vindicate their rights. In recognition of this problem, Congress specifically provided for the award of attorney's fees to successful plaintiffs. Because Congress choose a "private attorney general approach" to enforce the FDCPA, an award of fees is "mandatory." Camacho, 523 F.3d at 978 (citing Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir. 1995); see also Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991) (the FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.")(cited with approval in Camacho, 523 F.3d at 978).

## IV.     ATTORNEY'S FEES CALCULATED ACCORDING TO THE LODESTAR FORMULA

In calculating awards for fees, district courts must use the Lodestar formula. Camacho, 523 F.3d at 978. The Lodestar amount is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citing Morales v. City of San Rafael, 96 F.3d 359,

363 (9th Cir. 1996). A "reasonable hourly rate" is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Camacho, 523 F.3d at 989 (*citing* Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). In this case, the relevant community is the Eastern District of California. The applicant for fees bears the burden of proving that the fee request is reasonable, with a strong presumption that the Lodestar amount represents a fair and appropriate fee award. *See* City of Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2640, 120 L. Ed. 2d 449 (1992); Blum v. Stenson, 465 U.S. 886, 895-896, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984). The court may adjust the Lodestar based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 536 F.2d 67 (9th Cir. 1975), which are not subsumed under the Lodestar calculation[8]. *Id.*

Plaintiff has submitted her counsel's contemporaneous billing records in support of this motion and set forth the reasonable rate in this community *infra*.

### a. Counsel's Contemporaneous Billing and Expense Records

Attached as Exhibits 1 and 2 to the Affidavit of Sergei Lemberg, principal of Lemberg & Associates, LLC (the "Firm") are the Firm's contemporaneous billing and expense records associated with this case.[9] The Firm spent 268.6 hours on this case, and incurred $91,474.00in attorney's fees. *See* Lemberg Aff., Exhibit 1. The Firm's expenses were $2,943.62 for payment of

---

[8] The factors articulated by the Ninth Circuit in Kerr are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Kerr, 526 F.2d at 70.

[9] As already addressed, time spent on Plaintiff's class certification motion was eliminated.

fees for filing the Complaint, for service of the Summons and Complaint upon the Defendant, and

for travel expenses.[10]  *See* Lemberg Aff. Exhibit 2.

The following chart summarizes Plaintiff's counsel's work on this case (Plaintiff's complete

time sheet is attached as Exhibit A to the Affidavit of Sergei Lemberg):

| Category | Time | Fees |
|---|---|---|
| Communication with Client | 3.0 | $818.00 |
| Communication with Opposing Counsel | 12.7 | $4,790.00 |
| Preparation for Court, Travel to Court, and Communication with Court | 16.8 | $6090.00 |
| Draft and File Complaint and Other Court Documents | 25.7 | $8,398.00 |
| Discovery | 37.6 | $13,624.00 |
| Travel to Deposition, Preparation for Deposition, and Deposition | 34.5 | $12,648.00 |
| Motion to Compel | 6.8 | $2,388.00 |
| Motion for Summary Judgment | 40.9 | $13,756.00 |
| Motion to Oppose Summary Judgment | 73.0 | $23,820.00 |
| Motion for Attorney's Fees and Costs | 16.6 | $5,142.00 |
| Total: | 267.6 | $91,474.00 |

**b.  Plaintiff's Counsel's Hourly Rate is Reasonable**

In total, Plaintiff's counsel seeks payment for 267.6 hours of work for a total amount of

$91,474.00.  In the context of determining the reasonableness of fees under a fee-shifting statute, a

District Court's primary concern is with the market value of counsel's services.  Camacho v.

Bridgeport Financial, Inc., 523 F.3d 973, 989 (9th Cir.  2008).

Rate determinations made in cases of similar difficulty is "satisfactory evidence of the

prevailing market rate." *Id.* at 980 (citing United Steelworkers of Am. V. Phelps Dodge Corp., 896

F.2d 403, 407 (9th Cir.  1990). Here, Plaintiff seeks hourly rates of $360.00 to $400.00 for senior

attorneys and $300.00 for junior members for work performed.  These amounts are reasonable and

---

[10] Counsel eliminated from the computation expenses which were not solely related to this case.  For example, Mr. Lemberg combined his trips to California for depositions and court appearances with other business and personal matters.  Therefore, his cross-country travel costs are not included.

well within the range charged in the Sacramento legal community.  *See* <u>Avila v. Olivera Egg Ranch, LLC</u>, 2010 WL 1404397, *1 n.3 (E.D. Cal., April 6, 2010) ($400 and $300 hourly rate allowed under lodestar calculation for senior and junior attorney respectively); <u>Noyles v. Kelly Services, Inc.</u>, 2008 WL 3154681 (E.D. Cal., Aug. 4, 2008) (finding fee of $350.00 and $325.00 to be reasonable); <u>Taylor v. Chaing</u> 2009 WL 453050 (E.D. Cal, Feb. 23, 2009) ($335 rate is a reasonable); <u>Costa v. National Action Financial Services</u>, 2008 WL 1925235 (E.D. Cal., April 30, 2008) ($315.00 is a reasonable rate); <u>Beauford v. E.W.H. Group Inc.</u>, 2009 WL 3162249 (E.D. Cal., Sept. 29, 2009) (Judge Ishii ruled that a $350 hourly rate was reasonable for the Eastern District of California).

Sergei Lemberg, Esq., Plaintiff's counsel of record in this action the founder and principal of Lemberg & Associates, a consumer protection law firm.  Mr. Lemberg is a 2001 graduate of the University of Pennsylvania with extensive Federal litigation and consumer law experience and years of experience practicing consumer law.

Susan Schneiderman is a senior associate at Lemberg & Associates.  Ms. Schneiderman has been a Federal litigator for over twenty-five (25) years.  Stephen Taylor, Esq. is an associate attorney at Lemberg & Associates and is actively involved in many FDCPA actions at the firm.  Although Mr. Taylor and Ms. Schneiderman are not members of the California bar and are not admitted to practice in the Eastern District of California, but both are admitted in other jurisdictions and practice consumer law as substantial parts of their work duties.   Ms. Schneiderman is a member in good standing of the Bars of the Southern and Eastern Districts of New York, the Western District of Michigan, the Second Circuit Court of Appeals and the Supreme Court of the United States.  Mr. Taylor is a member in good standing of the Bars in the States of New York and and Connecticut.

Ms. Shapiro is of counsel to the firm with experience in complex litigation, legal malpractice and consumer rights cases.  Ms. Shapiro is admitted to the Bar of the State of California and to this Court.

Mr. Lemberg's usual hourly rate is $400.00.  Ms. Schneiderman's hourly rate is $360.00. Ms. Shapiro and Mr. Taylor's usual hourly rate is $300.00.  Finally, consistent with the Firm's billing practice, paralegal time for Mr. Guadiana and Mr. Hirnyk has been billed at $220 per hour.

### c.  <u>All Work Submitted is Reasonable</u>

All work submitted by the Plaintiff is fully compensable and no adjustment to the Lodestar figure should be made.  That Plaintiff was not successful on some of the claims originally brought does not, without more, constitute grounds to reduce her attorney's fee.  In fact, the Ninth Circuit subscribes to the majority rule that, where the successful and unsuccessful claims are related, i.e. "involve a common core of facts or are based on related legal theories" the court should not reduce the fees sought based upon failure of one or more of the legal theories claimed. <u>Dang v. Cross</u>, 422 F.3d 800, 813 (9th Cir.  2005). Where the claims are related, the court must

> Evaluate[] the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.  Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  When a plaintiff has achieved only partial or limited success, however, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. **Nonetheless, a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee**. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435 n.11, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir.  2001) [internal citations omitted; emphasis supplied].

<u>Dang v. Cross</u>, 422 F.3d 800, 813 (9th Cir.  2005)

Here, the facts underlying both Plaintiff's successful and unsuccessful claims arose from the same operative facts and conduct.  For example, liability under Counts II, IV and VIII (withdrawn and dismissed claims) and Counts I & III (successful) all concerned the transmission and content of

the Defendants' debt collection letter. Additionally, Counts VII and VIII (withdrawn and dismissed claims) and Counts I, V & VI (successful) all concerned the same telephone calls made by Defendants  in attempts to collect a debt.   Therefore the entire complaint was born out of the same set of circumstances and facts, and the time spent on the unsuccessful claims invariably contributed to the success of the prevailing claims. *See* Goray v. Unifund CCR Partnters, 2008 WL 2404551, *7 (D.Hawai'I, June 13, 2008); Savage v. NIC, Inc., 2010 WL 2347028 (D. Ariz., June 9, 2010); Additionally, the Plaintiff obtained a judgment $1,010.99, more than the maximum amount of statutory damages available under the FDCPA ($1,000.00) which is a successful result entitling the Plaintiff to a full compensatory fee. Savage, at *3 (no reduction warranted where plaintiff was successful on two of seven claims)

The denial of Plaintiff's motions for class certification and partial summary judgment also do not warrant a downward adjustment of the Lodestar.  As an initial matter, Plaintiff has deducted all time related to her motion for class certification and class issues and is not seeking recovery of those fees at this time. Accordingly, the lodestar should not be reduced.  *E.g.*  Gray v. Florida First Financial Group, Inc., 359 F. Supp. 2d 1316, 1320 (M.D. Fla. 2005).  Costs related to Plaintiff's motion for summary judgment are recoverable since "that motion was not separable, and was premised on the common core of facts giving rise to Plaintiff's claims" and helped to "narrow the issues" before the Court.  Lee v. Javitch, Block & Rathbone, LLP, 568 F. Supp. 2d 870 (S.D. Ohio 2008).  There, even though Plaintiff's motions for class certification and summary judgment were denied, the Court declined to downwardly adjust the lodestar and granted Plaintiff $125,000.00 in fees and costs.  Here as in Lee, Plaintiff's unsuccessful motion for partial summary judgment was not frivolous and addressed the "very crux of this suit," whether or not the contents of the Defendant's letter and attempts to communicate with the Plaintiff violated the FDCPA. *Id.*  Given

that Plaintiff was successful on her related claims, time expended on the summary judgment motion should not be excluded from the fee amount.

      **d.**  **Downward Adjustments to the Lodestar Based Upon Plaintiff's Recovery Should Not Be Made**

It is not a material factor in fee determination that damages awarded are less than the fees and costs sought.  In fact, it not unusual in consumer protection actions for awards of fees to eclipse the amount of damages.  *See, e.g.* City of Riverside v. Rivera, 477 U.S. 561, 574 (1986)(awarding $245,456.25 in attorney's fees and $33,350.00 in damages); Building Serv. Local 47 v. Raceway, 46 F.3d 1392, 1401 (6th Cir.  1995) (ERISA case awarding $70,185.95 in attorney's fees and $25,598.71 in damages); Ne. Women's Ctr. v. McMonagle, 889 F.2d 466, 471-475 (3d Cir.  1989) (RICO case wherein over $64,000.00 was awarded in attorney's fees and $2,661.00 in damages); Perez v. Perkiss, 742 F. Supp. 883 (D. Del. 1990) (FDCPA case awarding $10,110.00 in attorney's fees and $1,200.00 in damages); Grandisher v. Check Enforcement Unit, 2003 WL 187416 (W.D. Mich. 2003) (FDCPA case awarding $59,872.00 in attorney's fees and $1,000.00 in damages); Malone v. Hecker, 2007 WL 4200951 (D. Mass 2007) (FDCPA case awarding $17,785.50 in attorney's fees and $13,000.00 in damages).  Various "proportionality" arguments have been rejected by courts as having a chilling effect on consumer actions.  Oslan v. Law Offices of Mitchell N. Kay, 232 F. Supp. 2d 436, 444 (E.D. Pa. 2002).

**V.**    **WORK PERFORMED BY ATTORNEYS NOT ADMITTED TO THE CALIFORNIA BAR OR THIS DISTRICT IS RECOVERABLE**

Plaintiff submitted time spent by two attorneys, Susan Schneiderman, Esq., and Stephen Taylor, Esq., neither of whom is a member of the California bar or the bar of this Court.  The work performed (legal research, briefing, work on discovery projects) in their capacity as associates of the Firm is fully compensable.

The Ninth Circuit in <u>Winterrowd v. American General Annuity Ins. Co.</u>, 556 F.3d 815 (9th Cir. 2009) identified two theories under which the time of a non-admitted firm attorney is recoverable. First, an attorney's time is compensable if, had the attorney applied for *pro hac vice* admission, there was no impediment to the granting of that application as a matter of course. <u>Winterrowd</u> at 822.  Here the record shows that Ms. Schneiderman and Mr. Taylor are both members in good standing of State and Federal bars and in all respects meet this Court's requirements for admission *pro hac vice*. (Schneiderman Aff.¶¶ 2,3; Taylor Aff. ¶ 1).  Further, none of the exclusions in LR 180(b)(2) apply: neither Ms. Schneiderman nor Mr. Taylor reside in California, are regularly employed in California or regularly engage in professional activities in California.  Because both attorneys could have applied to appear *pro hac vice*, their time is recoverable.

Second, because Ms. Schneiderman and Mr. Taylor did not "appear" or "practice" before this Court their time is fully compensable.  As the Appellate Court stated:

> This court has permitted fee recovery for the work of paralegals, database managers, legal support, summer associates, and even attorneys who have yet to pass the bar. <u>Nat'l Res. Def. Council, Inc. v. Winter</u>, 543 F.3d 1152 (9th Cir. 2008). These participants in the legal process do not "appear" before the district court, as they do not argue cases or sign briefs. They are nevertheless an integral part of the litigation process.

<u>Winterrowd</u>, at 824.

In <u>Winterrowd</u> the Court found that plaintiffs were entitled to recover attorney's fees for the work of an Oregon attorney who provided assistance to a California attorney in connection with a case pending in the Central District.  Key to the Court's ruling was that the non-California attorney:

> did not physically appear before the Central District, did not sign pleadings in the case before the Central District, had minimal, nonexclusive contacts with the Winterrowd plaintiffs, that Wheatley, Jr., who was licensed to practice law in

California, was the person who alone remained responsible to the plaintiffs, and that Wheatley, Sr. did not render legal services directly to the plaintiffs.

*Id.* at 825.  Importantly, the Court in <u>Winterrowd</u> relied on <u>Dietrich Corp. v. King Resources, Co.</u>, 596 F.2d 422 (10th Cir.  1979) which found persuasive an ABA Committee on Professional Ethics rule directly addressing the practice of un-admitted firm attorneys:

> "there are no ethical barriers to carrying on the practice by such a firm in each state so long as the particular person admitted in that state is the person who, on behalf of the firm, *vouched for the work of all of the others and, with the client and in the courts, did the legal acts defined by that state as the practice of law*.... The important requirement in this respect is simply that the local man must be admitted in the state and must have the ability to make, and be responsible for making, decisions for the lawyer group."

<u>Winterrowd</u>, at 824-25, (*quoting* <u>Dietrich Corp</u>, at 426 (*citing* ABA Comm. on Prof'l Ethics Opinions, No. 316 (1967)) (emphasis in original).

Here, neither Ms. Schneiderman nor Mr. Taylor signed pleadings.  Each had only minimal, incidental and nonexclusive contacts with Ms. Evon.  Each operated at all times at the direction and under the supervision of Mr. Lemberg and/or Ms. Shapiro.

The Ninth Circuit drew a similar conclusion from the Supreme Court of California's decision in <u>Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Ct. of Santa Clara County</u>, 17 Cal. 4th 119, 70 Cal. Rptr. 2d 304, 949 P.2d 1 (1998), opining:

> <u>Birbrower</u> suggested that fees would have been awarded for the practice of law engaged in California by the out-of-state members of the firm if a "firm attorney engaged in that practice was an active member of the California State Bar." *Id.* at 131, 70 Cal. Rptr. 2d 304, 949 P.2d 1. More recently, in <u>Frye v. Tenderloin Housing Clinic, Inc.</u>, 38 Cal.4th 23, 40 Cal. Rptr. 3d 221, 129 P.3d 408 (2006), the Supreme Court of California said that in <u>Birbrower</u>, "we concluded that an out-of-state law firm was not entitled to a judgment enforcing its client's obligations under a fee agreement for legal services rendered in California, because neither the firm *nor its lawyers* were authorized to practice law in California." *Id.* at 48-49, 40 Cal. Rptr. 3d 221, 129 P.3d 408 (emphasis in original)

<u>Winterrowd</u>, at 822.

Because Ms. Schneiderman and Mr. Taylor (i) did not make an appearance before this Court, (ii) would have been permitted *pro hac vice* and (iii) at all times worked under and at the direction of a lead attorney subject to this Court's jurisdiction, Plaintiff is entitled to recover their attorney's fees.

**VI.     Conclusion**

Plaintiff's fee application is reasonable in time expended and amount requested.  Plaintiff requests that the Court award him $94,417.62 for her attorney's fees and costs.

Dated:    August 12, 2010

LEMBERG & ASSOCIATES, LLC
*Attorneys for Plaintiff*

By:  /s/ Sergei Lemberg
Sergei Lemberg
*Attorneys for Plaintiff*
1100 Summer Street
Stamford, CT 06905
t: (203) 653-2250
f : (203) 653-3424
slemberg@lemberglaw.com

1
2

### CERTIFICATE OF SERVICE

3
4
5
6

**THIS IS TO CERTIFY** that on August 12, 2010 a copy of the foregoing was electronically filed with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

7
8
9
10
11
12

John N. Dahlberg, Esq.
Angelito R. Sevilla, Esq.
Dennis Justin Kelly
Dillingham & Murphy, LLP
225 Bush Street
6th Floor
San Francisco, Ca  94104-4207
t:(415) 397-2700
f :(415) 397-3300

13
14
15
16

/s/ Sergei Lemberg

_____

Sergei Lemberg

17
18
19
20
21
22
23
24
25
26
27
28
29
30